**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DAVIS ARNA,

      Plaintiff,

v.                                                                        Case No. 25-cv-1177-NJR

C/O HART, BOSWELL, NURSE
MORGAN, WEXFORD MEDICAL
SERVICE, and SERGEANT JONES,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Davis Arna, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. Arna's original Complaint (Doc. 1) was stricken for improper joinder (Doc. 15). Arna's First Amended Complaint (Doc. 16) focused on medical care for his pain, but he failed to adequately state a claim against any defendant (Doc. 17). His amended pleading was dismissed, and he was granted leave to file a Second Amended Complaint (*Id.*). In his Second Amended Complaint (Doc. 18), Arna alleges that Defendants were deliberately indifferent to his pain and his conditions of confinement.

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Second Amended Complaint

On April 10, 2024, Arna was housed in the chapel with other inmates while the tactical team conducted a shakedown of the East Cellhouse (Doc. 18, p. 6). Arna alleges that Correctional Officer ("C/O") Hart and additional members of the tactical team were discriminating against African American inmates with braids or dreads by stating "if it ain't white it ain't right" and "niggers gonna fall in line." (*Id.*).

After waiting in the chapel for over two hours, Hart approached Arna and walked him over to the nurses (Doc. 18, p. 6). The nurses asked him several questions. Arna fails to indicate the nature of these questions; he merely states that the questions did not concern his medical issues (*Id.*). Hart then escorted Arna to segregation. Arna alleges that Hart told him that he was going to segregation because he doesn't listen, and he was issued a disciplinary ticket for disobeying a direct order (*Id.* at p. 7).

While in the chapel, Arna informed Hart that he suffered from severe lower back pain, swollen legs, diabetes, and high blood pressure (Doc. 18, p. 7). His legs were clearly swollen, and Arna alleges that Hart should have been able to tell from his walk that his legs were swollen (*Id.*). Arna further alleges that Hart could have contacted the healthcare unit to confirm Arna's conditions, but he failed to do so (*Id.*). Arna alleges that he was in pain but received no medical care or medications (*Id.*). Arna alleges Hart failed to take

2

him to the healthcare unit for his back pain and violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

Upon arriving in the segregation unit, Arna was strip searched several times. Sergeant Anthony B. Jones conducted one of the searches and then escorted Arna to his cell (Doc. 18, p. 7). The cell lacked a mattress, sheets, blanket, and pillows (*Id.* at pp. 7-8). The cell also lacked basic hygiene items including tissues (*Id.* at p. 8). Arna noted bugs in his cell, and the cell lacked working lights (*Id.* at pp. 7-8). He informed Jones of the conditions, but Jones merely looked in the cell and then walked away (*Id.*). Arna was without hygiene items for five days, lacked hot water for over two days, and did not receive a blanket, linens, and pillow for four days (*Id.* at p. 8). He remained in the cell for six days without lights and proper ventilation (*Id.*). Arna alleges the lack of bedding violated various correctional institute standards (*Id.*).

Arna also informed Jones of his lower back pain, swollen legs, high blood pressure, and diabetes (Doc. 18, p. 8). Jones ignored his complaints (*Id.*).

Arna alleges that Wexford is liable because the company provides payments for all medications for inmates and pays for nursing staff (Doc. 18, pp. 8-9). Wexford also must approve all medications and medical tests completed at outside hospitals (*Id.* at p. 9). Similarly, Arna alleges Boswell is the pharmacy that contracts with IDOC and is responsible for making sure inmates receive their medications and that refills of those medications are made in a timely fashion (*Id.*). Arna alleges that on several occasions Boswell failed to ensure that his medication was in stock and timely refilled (*Id.*).

He alleges that both companies are liable because they are responsible for ensuring inmates receive medical care.

While in segregation, on April 11, 2024, Nurse Morgan passed out pain medication to Arna (Doc. 18, p. 10). But on April 12, 2024, she informed Arna that his prescription ran out and the pharmacy had not refilled to prescription (*Id*.). He asked if she had any other pain medications because his back and leg pain was bad that day (*Id*.). Arna alleges that he was supposed to receive pain medication twice a day (*Id*.). When Arna asked Morgan if she had any mediation for him, she simply walked away (*Id*.). Arna alleges that the nurses are responsible for passing out the medication and she knew that he was out of medication. She informed him that she obtained the one she gave him from a reserve pack (*Id*.). Every day, Arna informed Morgan that he was in pain and needed his pain medication (*Id*. at pp. 10-11). Arna alleges that Morgan did not provide him with any other medication for his pain until his pain medication was refilled five days later (*Id*. at p. 11).

### Preliminary Dismissals

Although Arna identifies Wexford and Boswell Pharmacy as defendants, he merely alleges that each company is in charge of issuing medications and/or healthcare at the prison. But corporations such as Wexford and Boswell can only be liable if the corporation had a policy or practice that caused the constitutional deprivation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Arna fails to point to any policy of the corporations that

caused delays in his medications. Thus, any claim against Wexford and Boswell is **DISMISSED without prejudice**.

Arna also alleges that staff at Menard violated the ADA. In order to state a claim of discrimination under the ADA, a plaintiff must show: (1) that he suffers from a disability as defined in the statute, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). Arna fails to allege the disability that he suffers from or the program that he was excluded from participating in because of his disability. He fails to allege how the delays in his pain medication or the placement in segregation violated the ADA. His conclusory statements that Defendants' actions violated the ADA are not enough to state a claim.

Arna also alleges that C/O Hart and other members of the tactical team were "discriminating" against African American inmates with dreads and braids. But he only alleges that they were making statements to the inmates, some of which included racial slurs. Such verbal harassment, by itself, "does not constitute cruel and unusual punishment… or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). Arna fails to offer any allegations suggesting that he was singled out because of his race. Thus, any claim against Hart for racial discrimination is **DISMISSED without prejudice**.

<u>**Discussion**</u>

Based on the allegations in the Second Amended Complaint, the Court designates the following counts:

Count 1:    **Eighth Amendment deliberate indifference to medical needs claim against C/O Hart for denying Arna access to medical care.**

Count 2:    **Eighth Amendment deliberate indifference to medical needs claim against Sergeant Jones for denying Arna access to pain medication and medical care.**

Count 3:    **Eighth Amendment conditions of confinement claim against Sergeant Jones for placing Arna in a cell with bugs and lacking lights, hot water, basic hygiene, and bedding.**

Count 4:    **Eighth Amendment deliberate indifference to medical needs claim against Nurse Morgan for denying Arna access to pain medication for five days.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

*Count 1*

As to the claim in Count 1 against C/O Hart, Arna fails to state a claim. Arna alleges that he informed Hart of his back pain, leg swelling, and high blood pressure.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

He also contends that Hart could see that Arna's legs were swelling. But although he alleges that Hart failed to take him to the healthcare unit or provide him with care, he acknowledges that Hart took him to the nurses, who asked him a series of questions. Arna fails to elaborate on his conversation with the nurses (only to say that they failed to inquire about his medical condition), but he clearly acknowledges that Hart took him to the nurses before taking him to segregation. Nothing in the amended pleading suggests that Hart acted with deliberate indifference towards Arna's condition. Thus, the claims in Count 1 are **DISMISSED without prejudice**.

*Count 2*

Arna also fails to state a claim against Sergeant Jones for Jones's response to his medical conditions. Arna alleges that he informed Jones that he had lower back pain, swollen legs, high blood pressure, and diabetes. Although he informed Jones of his medical conditions, there is no indication that Arna informed him of his need for care at that time or even what care Arna alleges that he needed upon entering segregation. He acknowledges that he spoke with nurses before being transported to segregation. It is not clear what Arna's medical needs were at the time that he entered segregation. Thus, there are no allegations to suggest that Jones was deliberately indifferent to those needs. Accordingly, Count 2 is **DISMISSED without prejudice**.

*Count 3*

Arna does, however, state a viable claim against Jones for the conditions of his cell in Count 3. He alleges that he spoke to Jones and informed him of his lack of access to basic hygiene and bedding. He also informed Jones that the cell had bugs in it, lacked a

7

working light, and lacked hot water. Arna further alleges that he went several days without hygiene items and access to proper lighting and ventilation. At this stage, Arna states a viable claim against Jones. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

*Count 4*

Arna's claim in Count 4 is factually different than his claims in Counts 1-3. His claim in Count 4 focuses on the delay in refilling his pain mediation after his prescription ran out on April 11, 2024. As such, the Court must determine whether the claim is improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rules of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Rule 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). Arna's claim in Count 4 involves a different defendant, Nurse Morgan, and alleges that she acted with deliberate indifference when he ran out of his pain medication. This claim is distinctly different from his claims against Jones regarding the conditions of his cell. Thus, the Court finds it proper to **SEVER** the claim in Count 4 against Nurse Morgan into a new case.

## Disposition

For the reasons stated above, Count 4 against Nurse Morgan is **SEVERED** into a new case. The Clerk of Court is **DIRECTED** to file the following documents in the new case:

- This Memorandum and Order;
- The Second Amended Complaint (Doc. 18); and
- Stanton's motion for leave to proceed *in forma pauperis* (Doc. 2).

As to the remaining claims in this case, Count 3 shall proceed against Anthony B. Jones. Counts 1 and 2, as well as all other potential claims and defendants, are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Anthony B. Jones: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Arna. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Arna, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

9

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Because Arna's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Arna, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Arna is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 17, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

10

## Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your Second Amended Complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. After the defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**